Joseph A. Cox, S.
The testator died on December 26, 1960 at 475 Park Avenue, New York County. On January 9, 1961 there was filed in this court a petition for the probate of two testamentary instruments. This petition alleged that the testator resided at 475 Park Avenue, New York City and that his distributees were his three children. The petition stated that testator and Jean M. Denis had been married and divorced and that the petitioners did not believe that she was a distributee of the testator. The instrument propounded as the testator’s will bequeathed $50,000 to Jean M. Denis and the instrument propounded as a codicil to the will nominated her as guardian of the testator’s infant son Robert M. Connally. Jean M. Denis executed a paper constituting an appearance in the proceeding, a waiver of the service of citation and an explicit consent that the propounded instruments be admitted to probate. Attorneys representing Jean M. Denis filed an authorized notice of appearance on her behalf as testamentary guardian of Robert M. Connally. The special guardian representing this infant filed his report recommending probate. No objection to probate having been filed, proof was taken respect *133 ing the execution of the propounded papers, that testamentary capacity of the testator and his freedom from restraint. Thereafter, on February 9, 1961, a decree was made admitting the propounded instruments to probate and granting letters testamentary and letters of trusteeship.
On June 5, 1961 Jean M. Denis, individually and as general guardian of Robert M. Connally, filed a petition asking that the probate decree be opened, vacated and set aside. The stated basis for this relief is that the testator was not a resident of New York County but was a resident of Suffolk County. The petition in this vacatur proceeding concedes that all the facts upon which the petitioner’s allegations of residents are based were within her knowledge at the time she appeared in the probate proceeding and consented to probate. She alleges that she “ did not notice ” that the proceeding was in New York County. This failure to notice occurred when a copy of a citation was served upon her, when she later executed a waiver and consent to probate and when, still later, she executed an affidavit and acknowledged an authorization to attorneys to appear for her as testamentary guardian. The attorneys then appearing do not represent the petitioner on this application.
The executors have moved to dismiss the petition, pursuant to rules 106 and 107 of the Rules of Civil Practice, and this opinion is rendered on that motion.
The petitioner, not being a distributee of the testator, would have no position to oppose the will and, as a legatee, it is to her benefit to sustain the will. Nothing in the petition gives an indication as to the petitioner’s motive in making this application. Obviously a vacating of the probate decree must result in an additional expense to the estate which will not be imposed upon the petitioner as a general legatee but upon the residuary estate in which the infant has a 40% interest. In the probate proceeding neither the court-appointed special guardian nor the present petitioner, appearing as testamentary guardian, found any occasion to object to the probate and it must be presumed that no advantage will accrue to the infant by a second probate in another county.
The argument of the petitioner is based upon section 45 of the Surrogate’s Court Act which, in the case of a New York resident, confers upon the Surrogate’s Court of the county of residence jurisdiction exclusive of every other Surrogate’s Court to take the proof of a will. It is contended that, if the testator was a resident of Suffolk County, the decree of this court is void and must be vacated. Inasmuch as a motion has been made to dismiss the petition, the allegation of the petition *134 as to the residence of the testator in Suffolk County must be accepted for the purposes of the motion.
The caption “ Exclusive jurisdiction ” which is given to section 45 of the Surrogate’s Court Act could be misleading in its use of the word jurisdiction. It hardly can be contended that the jurisdictional basis for taking the proof of a will is found in section 45 inasmuch as such authority is within the general jurisdiction of the court as enumerated in section 40 of the Surrogate’s Court Act. Section 45. adds nothing to section 40 and is not a limitation upon section 40. The plain purpose of the Legislature in enacting sections 45 and 46 of the Surrogate’s Court Act was to establish the venue for proceedings in the Surrogate’s Court. Lacking such statutes fixing venue, petitioners for relief in the Surrogate’s Court would be privileged to petition in any county within the State irrespective of the residence of the decedent or the location of his assets. Not only could such a privilege be abused to harass interested persons and subject them to expense and inconvenience at the whim of a petitioner or his attorney, but such privilege could result in either a congestion of proceedings in a single county or the institution of separate proceedings in several counties involving a single decedent. By reason of sections 45 and 46 any action by a Surrogate in disregard of these statutes necessarily would be ineffectual and the statute is rigidly adhered to when the question of domicile is raised in a pending probate proceeding (Matter of Johnson, 259 App. Div. 290, affd. 284 N. Y. 733). In the case at bar a question of domicile was not presented to this court in the probate proceeding and upon the facts alleged in the pleadings and unchallenged by the parties this court had a jurisdiction exclusive of the Surrogate’s Courts of other counties. The decree made in the probate proceeding presumptively established the court’s jurisdiction (Surrogate’s Ct. Act, §§ 43, 80).
.This question of jurisdiction and the significance of the statutes respecting the institution of proceedings in the respective counties of the State was examined in Bolton v. Schriever (135 N. Y. 65) wherein the Court of Appeals said (pp. 70, 71, 72-73, 74) :
“We think that where the individual died an inhabitant of the state by reason of which there was in fact an estate to be administered upon, and the only question is which of the Surrogate’s Courts in the counties of the state should act, there is in that case jurisdiction in one of these counties over the subject-matter, that is, over the administering upon the estate of a deceased person dying an inhabitant of the state, and *135 which surrogate is to exercise such jurisdiction depends upon the fact as to which county deceased was an inhabitant of at the time of his death. The decision of such question where evidence is given, and upon a hearing of the parties, ought to be and, we think, is conclusive upon any collateral attack. Under our statute as to proof of wills, although it does not in terms provide that the petition shall state, or that the surrogate shall inquire and decide as to the fact of inhabitancy, yet we think the fair implication arising from a perusal of the whole statute upon the subject, is that the surrogate has power and is bound before admitting the will to probate or issuing letters to institute the inquiry and to decide upon the fact of inhabitancy.
“ * * * The duty to investigate and decide upon the fact of inhabitancy is necessarily and naturally to be implied from the whole provisions of the statute relating to wills and their probate and such duty is to be performed before the will is admitted or letters issued. If no contest is made and there is no evidence upon the subject of the inhabitancy of the testator one way or the other, except the sworn allegation in the petition, I do not see why the surrogate may not rely upon the fact so stated.
a * # * In the organization of the tribunals which are to exercise this jurisdiction, although the language of the statute may create a separate and distinct tribunal for each county in the state, and upon certain facts grant jurisdiction to one of them to the exclusion of all others, yet the facts upon which the jurisdiction is given to the court of one county instead of to another are merely incidental, partaking somewhat of the character of matters of procedure, the main fact being the actual death of an individual who, at the time of his death, was an inhabitant of the state. That is the jurisdictional fact, upon the existence of which is founded the duty of the state to protect and distribute the property according to law. Whether one or the other of the Surrogates’ Courts in the various counties shall administer upon the estate, and thus fulfill the obligation which lies with the state itself, is a question which the legislature has provided for, and it depends, among other things, upon the fact of inhabitancy. This fact the surrogate to whom the matter is presented must decide, and if he decide that it exists, and upon evidence which legally tends to support his decision, under such circumstances, we think, it ought to stand until reversed. This is believed to be the general rule. It is a matter of very trifling importance, except upon the mere question of convenience, which of such Surrogates’ Courts shall take the proof as to the due execution of the will, and *136 grant letters testamentary thereon. For the purpose of the orderly administration of the estates of deceased persons who died inhabitants of our state, the legislature has provided certain rules governing the subject, and has also provided certain conditions upon which the power of a surrogate to take jurisdiction of the matter depends; the subject-matter, however, of the jurisdiction is the administration of the estates of deceased persons, and over this subject-matter the state has granted to the surrogate of each county general jurisdiction. * * * The jurisdiction to administer is bestowed upon each surrogate to the exclusion of all others, where the facts exist which are named in the statute. It is granted to him, however, out of the general and complete jurisdiction resting with the state over the entire subject of administration upon the estates of deceased inhabitants, and that general jurisdiction has been exercised by the state in the creation of a tribunal in each county for such purpose of administration, and when the question of jurisdiction arises before one of such courts where the deceased died an inhabitant of the state, and the right of administration attaches to the Surrogate’s Court of some county, it must, in the nature of things, be decided by the surrogate before whom it comes, and being matter incidental only in its nature, the decision of the surrogate, founded upon some evidence, must be conclusive, even though erroneous, except upon a direct review.”
The authorities established that a probate decree is not subject to collateral attack solely upon the ground that the probate proceeding, properly instituted in this State, was brought in the wrong county (Bolton v. Schriever, supra; Van Gaasbeek v. Staples, 85 App. Div. 271, affd. 177 N. Y. 524; Flatauer v. Loser, 211 N. Y 15; O’Connor v. Huggins, 113 N. Y. 511; Stolz v. New York Cent. R. R. Co., 7 N Y 2d 269). Is a party to á proceeding who participated in the proceeding, consented to the decree and took no appeal therefrom, in a better position than one attempting a collateral attack? It is the opinion of this court that the petitioner is bound by the probate decree. The fact issue of domicile was presented by the probate petition and the allegation of residence in New York County was uncontroverted. The making of the probate decree constituted a finding of residence which is binding upon the parties. The basic jurisdiction of the subject matter rested in the Surrogate and the necessity for finding residence in a particular county was created only by a rule of convenience ‘1 partaking somewhat of the character of matters of procedure ’ ’ which has been considered “ of very trifling importance ” (Bolton v. Schriever, *137 supra, p. 73). The petitioner here seeking to vacate the decree had every opportunity to challenge the fact allegation as to residence but she chose not to do this. The court had jurisdiction of the subject matter by reason of the testator’s residence in this State and the court had jurisdiction of the parties. The real basis for the attack upon the decree is a later discovered dissatisfaction with a fact finding which was not put in issue in the probate proceeding. The petitioner certainly is not in an equitable position to demand a vacatur since she has established neither legitimate excuse for her failure to raise the fact issue at the proper time nor injury to her from the existing decree.
A basis does not exist for vacating the decree pursuant to the provisions of subdivision 6 of section 20 of the Surrogate’s Court Act, although the petitioner’s brief on this motion offers that statute as a basis for her petition. Nothing in the petition establishes, or intimates, 11 fraud, newly discovered evidence, clerical error, or other sufficient cause ”, which are the essentials to action under subdivision 6 of section 20. The petitioner does not rely upon fraud, newly discovered evidence or clerical error. She does contend that she failed to take notice of either the pleadings in the probate proceedings or the several writings which she signed in connection with that proceeding. This indifference on her part cannot be regarded as other sufficient cause, particularly in view of the fact that the definition of this statutory expression has been limited by the words preceding it in the statute (Matter of Brennan, 251 N. Y. 39; Matter of Tilden, 98 N. Y. 434; Matter of Hermann, 178 App. Div. 182). The motion to dismiss is granted.